**OZARK AIR LINES, INC. and Thomas J. Korte, Appellees,**

v.

**NATIONAL MEDIATION BOARD and the Air Line Pilots' Association International and Arthur J. Schenk, Jr., Appellants.**

Nos. 85–2147, 85–2157.

United States Court of Appeals, Eighth Circuit.

Argued April 18, 1986.

Decided July 17, 1986.

Rehearing and Rehearing En Banc Denied Sept. 11, 1986.

Jonathan A. Cohen and John C. Hoyle, Washington, D.C., for appellants.

Donald J. Meyer, Clayton, Mo., for appellees.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and ROSENN,* Senior Circuit Judge.

ROSENN, Senior Circuit Judge.

This appeal raises the question of the finality of an arbitration award rendered by a "Retirement Board" selected by the parties pursuant to a collective bargaining agreement. The genesis of the dispute is a

designation.

* Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by

disagreement between Ozark Air Lines, Inc. (Ozark), the employer, and Air Line Pilots Association International (ALPA), the signatories to the agreement, on whether ALPA had the right to reopen the Board's award and compel additional proceedings over the denial of disability benefits to its member, Arthur J. Schenk, Jr. Ozark sought an order in the United States District Court[1] enjoining Schenk and ALPA from further pursuing the application for disability benefits before the Board, directing the rescission by the National Mediation Board (NMB) of its appointment of a neutral referee and barring it from making any other appointment to the Retirement Board pertaining to Schenk's application for disability retirement benefits. The district court entered summary judgment in favor of Ozark. 617 F.Supp. 400. We affirm, but reverse the judgment as to the National Mediation Board.

## I.

Appellant ALPA is the exclusive bargaining representative of pilots employed by Ozark Airlines, Inc. Ozark has agreed in successive labor contracts to provide retirement benefits in accordance with the Ozark Airlines, Inc. Pilots Retirement Plan. In October 1981, appellant Arthur H. Schenk, Jr., then an Ozark pilot, filed an application for disability retirement benefits due to head and back injuries. Thomas J. Korte, the Retirement Plan administrator considered and denied Schenk's back injury claim, the only injury relevant to this appeal, and Schenk appealed to the Retirement Board. The Board is mandated by the Railway Labor Act, 45 U.S.C. § 151 et seq. (1982) (RLA), which covers employees and employers in the airline industry, 45 U.S.C. § 181. The Act mandates that each carrier and its employees establish a board to resolve disputes that arise under a collective bargaining agreement which cannot be resolved by negotiations. 45 U.S.C. § 184.[2] The Supreme Court concluded that similar provisions dealing with the National Adjustment Board "were to be considered as compulsory arbitration in this limited field." *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Company*, 353 U.S. 30, 39, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957). Accordingly, in 1975, ALPA and Ozark signed a letter agreement establishing a Retirement Board for the purpose of "hearing and determining all disputes which may arise out of the application, interpretation or administration of" the Pilots' Retirement Plan.

The Ozark-ALPA agreement provides that the Retirement Board shall consist of four members, two each to be designated by Ozark and the ALPA. On July 26, 1984, the four Board members, after a hearing, unanimously denied Schenk's claim for disability retirement due to back injuries. On September 24, 1984, an ALPA member of the Board resigned and was replaced by another ALPA appointee. Rules governing operations and scope of authority, set out in detail in the letter agreement, permit each party to replace its designees at any time.

On October 3, 1984, ALPA submitted to the Board a motion for reconsideration of

---

1. Judge John K. Regan, United States District Court for the Eastern District of Missouri.

2. 45 U.S.C. § 184 provides in pertinent part:
    System, group, or regional boards of adjustment
    The dispute between an employee or group of employees and a carrier ... by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by ... either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.
    It shall be the duty of every carrier and of its employees, acting through their representatives, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title. Section 153 mandates the creation of similar boards for the rail carrier industry.

the Board's decision. The agreement contains express provisions—sections 1.6 and 1.7—governing the finality of Board decisions, and the procedures for resolving certain deadlocks among the four Board members. Section 1.7 provides:

> In the event the members fail to agree on any matter before the Board, they may appoint an impartial chairman who shall cast the deciding vote on the matter. If . . . the Board fails to agree upon the election of an impartial chairman, the National Mediation Board shall be requested to select the impartial chairman.

The Board deadlocked over whether to reconsider its decision, with the two ALPA members in favor of reconsideration. The Ozark members maintained that the unanimous decision of the Board was final and binding, that the agreement contained no provisions for reconsideration of decisions, and that there was nothing pending before the Board. By a letter dated October 15, 1984, ALPA, purportedly acting pursuant to section 1.7 of the letter of agreement, requested the NMB to appoint a neutral referee to resolve the dispute that it characterized as the "Disability Application of Arthur H. Schenk, Jr." Ozark wrote to the NMB contending that there was no dispute pending before the Board and objected to the appointment of a neutral referee or impartial board chairman. Notwithstanding, the NMB nominated an individual in the event the parties chose to pursue arbitration.

## II.

ALPA argues on appeal that the district court lacked subject matter jurisdiction because the issue—the finality of the award as applied to Board decisions—was for the Board to decide and not the district court. ALPA also argues that the district court erred in its holding on the meaning of "final." Finally, it asserts that the injunction violates the Norris-LaGuardia Act. The NMB also appeals, asserting that the district court erred in entering an injunction against the NMB because the NMB has no interest in the dispute and did no more than provide access to an arbitrator at Ozark's request.

### A.

■ We first address the question of the district court's subject matter jurisdiction. The Supreme Court recently summarized the principles governing arbitrability in *AT & T Technologies, Inc. v. Communications Workers of America,* — U.S. —, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It iterated the ground rule that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.,* — U.S. at —, at 106 S.Ct. 1418 (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Steelworkers v. America Manufacturing Co.,* 363 U.S. 564, 570-71, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring)). The Court continued that it follows "inexorably" that "the question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not by the arbitrator." *AT & T Communications,* — U.S. at —, 106 S.Ct. at 1418 (citing *Warrior & Gulf,* 363 U.S. at 582-83, 80 S.Ct. at 1352-53). The Court's conclusion that arbitrability is a judicial question is predicated upon the contractual origin of the duty to arbitrate and that "a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *AT & T Communications,* — U.S. at —, 106 S.Ct. 1419 (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-47, 84 S.Ct. 909, 912-13, 11 L.Ed.2d 898 (1964)). Accordingly, the district court correctly undertook the responsibility to determine the arbitrability of the underlying dispute before it.

### B.

■ We turn to the primary question whether the letter agreement required the

deadlocked Board to submit the dispute over the finality of Board decision to an impartial chairman. To decide this question, the district court first had to decide whether the Board had the power to determine the meaning of "final" as applied to Board decisions. The resolution of the Board's power to determine the meaning of "final" effectively determines the question whether the issue is appropriate for arbitration, because the letter agreement, by granting the chairman the decisive vote in case of Board deadlock, indirectly grants all powers that it directly grants the Board. In other words, if the Board is not empowered to determine the finality of its award, then it is inappropriate for the court to allow the appointment of an impartial chairman.

The district court, consistent with the *AT & T* principle that arbitration is a question of intent of the parties, scrutinized the letter agreement to ascertain whether the parties to it intended to submit the meaning of "final" to an arbitrator. Under the RLA, air carrier board awards "shall be final and binding upon both parties to the dispute." 45 U.S.C. § 153 First (m); *Hunt v. Northwest Airlines, Inc.*, 600 F.2d 176, 179 (8th Cir.) (per curiam) (decisions of airline boards under section 184 have the same legal characteristics and effect as those of the railroad board under section 153), *cert. denied*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979). The RLA allows parties discretion in defining "final" as applied to airline industry board decisions:

> [T]he provisions of a [18 U.S.C. § 184] contract, such as ... the finality to be accorded board awards, are to be judged against the Act and purposes and enforced or invalidated in a fashion consistent with the statutory scheme. There may, for example, be any number of provisions with regard to the finality of an award that would satisfy the requirements of ... [the RLA]."

*International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 694, 83 S.Ct. 956, 963, 10 L.Ed.2d 67 (1963).

Therefore the RLA or the letter agreement in this case could have permitted the Board itself to define "final" and consequently given an arbitrator jurisdiction in case of deadlock. Neither the Act nor the agreement does this, however. The RLA establishes the Board's jurisdiction over certain grievances, but does not expressly permit it to redefine "final" or to reconsider its own decisions. The RLA grants a board the power to make awards, and in the event of a dispute over the interpretation of an award, to interpret its decision in light of the dispute, but not to reconsider it. 45 U.S.C. § 153 First (m). The letter agreement also lacks any provision permitting the Board to reconsider the finality of decisions.

ALPA argues that paragraph 2.1 of the letter agreement, which establishes the Board's jurisdiction, permits the Board to reconsider its decisions. Section 1.7, which empowers the appointment of an impartial chairman by the members of the Board, implicitly adopts for the chairman the range of powers set out for the Board in paragraph 2.1. Therefore, paragraph 2.1 establishes whether the Board, and consequently the impartial chairman, can determine the meaning of "final" as applied to its own decisions.

Paragraph 2.1 provides that:

> 2.1. Upon exhaustion of the procedures under section 14.4 of the Plan, the Board shall have the power and obligation to hear and determine all disputes which may arise out of the application, interpretation or administration of the Plan, and all disputes concerning participation in or benefits of Participants under the Plan, with power to sustain, reverse, alter, modify, or amend any decision giving rise to such disputes.

A careful reading of paragraph 2.1 supports the decision of the district court. Disputes reach the Board when a claimant is dissatisfied with a decision of the plan administrator, and the Board is empowered only to render a single decision in resolution of each dispute. Paragraph 2.1 does no more than ensure that disputants ex-

haust internal plan procedures before bringing disputes to the Board. Therefore "any decision giving use to such disputes" refers to decisions emanating from the plan's decision making process prior to Board consideration, not to decisions by the Board that resolve such disputes. Ozark and the ALPA fixed the meaning of "final" and did not provide the Board with the power to reconsider a decision rendered to the parties.

Appellants argue in the alternative that the issue of the appointment of an impartial chairman was procedural, and that procedural issues are appropriate for consideration by the Board. The district court rejected this argument. It noted that appellants sought an impartial chairman or referee to "resolve the following dispute: Disability Determination of Arthur Schenk, Jr.," and concluded that this called for a substantive rather than a procedural decision. Therefore, although the chairman would need to decide the procedural question to reach the substantive one, his primary task would be substantive—to decide Schenk's eligibility for disability benefits. On appeal, the ALPA cites *Air Line Pilots Ass'n Int'l v. Northwest Airlines, Inc.,* 498 F.Supp. 613, 618 (D.Minn.1980), *aff'd* 676 F.2d 705 (8th Cir.1981). This case, however, is inapposite. *Northwest Airlines* addresses a decision that was not final, and emphasizes in dictum that neither the board nor an arbitrator can reconsider a final board decision. 498 F.Supp. at 618. *Cf. Local P–9, United Food and Commercial Workers International Union v. George A. Hormel & Co.,* 776 F.2d 1393, 1394 n. 1 (8th Cir.1985) ("We agree with the district court that in this case if the arbitrator's award was final, it was improper for the arbitrator to order new briefing and amend his award so as to change the results.")

■ The district court correctly held that Ozark and the ALPA did not contemplate that the Board, and in turn an impartial chairman, would have the power to reconsider the finality of Board decisions. Because the Board reached unanimous agreement on the disposition of Schenk's claim, there was no matter before it that would enable its members to invoke paragraph 1.7 calling for an impartial chairman. Permitting board members, and in turn an impartial chairman, to reconsider the "Disability Determination of Arthur Schenck, Jr." would vitiate the finality of board decisions.

■ Congress has provided adequate relief for parties aggrieved by final Board decisions; 45 U.S.C. § 153 provides that such parties can seek review of board decisions in a United States District Court. Appellants could have availed themselves of that remedy. We conclude that the district court did not err in holding that the rendering of a decision by the Board exhausted its jurisdiction and left the Board without the power to reconsider the meaning of "final."

### C.

ALPA argues that the district court violated the Norris-LaGuardia Act proscription of injunctions in "any case involving or growing out of a labor dispute." 29 U.S.C. § 101 (1982). Although the ALPA did not raise this argument in the district court, we will consider the point on appeal because this issue strikes at the district court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(3).

■ ALPA cites *Boys Markets, Inc. v. Retail Clerks Union Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), in support of its argument. In *Boys Markets,* the Court announced a "narrow holding" that when a collective bargaining agreement contains mandatory arbitration procedures, the strictures of the Norris-LaGuardia Act do not bar a district court from enjoining a strike over a dispute that the union is bound to arbitrate. 398 U.S. at 253. Although the case unquestionably involved a labor dispute, the Court nonetheless permitted an injunction "to implement the

strong congressional preference for the private dispute settlement mechanisms agreed upon by the parties." *Buffalo Forge*, 428 U.S. at 407, 96 S.Ct. at 3147. *See Boys Markets*, 398 U.S. at 242 n. 8, 90 S.Ct. at 1588 n. 8. *Boys Markets* illustrates that the Norris-LaGuardia Act does not forbid injunctions where desirable concerns articulated by Congress outweigh those protected by the Norris-LaGuardia Act. *See also Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768, 774, 72 S.Ct. 1022, 1025, 96 L.Ed. 1283 (1952) (an injunction can be appropriate in a labor setting to bar racially discriminatory bargaining devices). Similarly, an injunction in the instant case is not inconsistent with the objectives of the Norris-LaGuardia Act and is consistent with the principle reiterated in *AT & T Communications* that the district court, not the arbitrator, should decide the arbitrator's jurisdiction.

*Buffalo Forge* also provides no support to ALPA even though the Court refused to countenance an injunction in that case. The Court in *Buffalo Forge* held that the Norris-LaGuardia Act prohibited enjoining a strike pending an arbitrator's decision as to whether the strike was forbidden by the collective bargaining agreement's no strike clause. The Court reached this decision because the "sympathy strike" of the union in support of sister unions negotiating with the employer was not over any dispute remotely subject to the arbitration provisions of the labor contract. It therefore concluded that there was no necessity under such circumstances to accommodate the policies of the Norris-LaGuardia Act to the requirements of section 301 of the Labor Relations Act and empower the issuance of an injunction in a labor dispute. *Buffalo Forge* is inapposite to the case at bar because its thrust is to safeguard the right to strike in a labor dispute, a concerted activity which lies at the core of the Norris-LaGuardia Act. *See, e.g., Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co.*, 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622

(1957). The dispute in this case has nothing to do with terms and conditions of employment or concerted labor activities; it concerns only a disability retirement claim of a single employee. No strike or other concerted labor activity is enjoined.

Furthermore, the RLA is tailored to the rail and air carrier industries, in contrast to the generality of the Norris-LaGuardia Act. The Supreme Court reviewed the Norris-LaGuardia Act vis-a-vis the RLA and stated that "the specific provisions of the [RLA] take precedence over the more general provisions of the Norris-LaGuardia Act." *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co.*, 353 U.S. at 42, 77 S.Ct. at 641 (1957). We conclude that the district court injunction did not violate the Norris-LaGuardia Act.

### III.

The judgment of the district court provides that "the appointment of Sylvester Garret as impartial chairman or neutral referee, heretofore made by the National Mediation Board ... is hereby rescinded and vacated, and said National Mediation Board is hereby enjoined and restrained from appointing any other impartial chairman or neutral referee for said 'purpose....'" The National Mediation Board (NMB) asserts that it was not properly a party to this suit and that the order entered against it should be vacated. It argues first, that the NMB had no power over the parties so that no controversy involving the NMB existed. Second, NMB contends that policies favoring voluntary arbitration dictate that it should not be enjoined from carrying out its wholly ministerial capacity of serving the public interest by providing voluntary access to its roster of arbitrators.

The NMB has no adjudicatory power. Its role in this case is limited to the nomination of an impartial chairman.[3] Accordingly, courts hold that the NMB should not be embroiled in the disputes of potential or actual parties to arbitration. For example,

---

3. *See* 45 U.S.C. § 155 (functions of mediation board).

in *Radin v. United States*, 699 F.2d 681, 685–86 (4th Cir.1983), the court held that a claimant who had been denied benefits stated no claim against the NMB in a suit for violation of his procedural due process rights because the NMB does not have the power to review decisions of the Railway Appeal Board and in fact has no adjudicative power whatsoever. It merely mediates voluntarily submitted disputes.

In the instant case, the NMB emphasizes that it simply provided the name of an arbitrator at the request of the ALPA. It was party to neither the procedural dispute over the finality of the Board decision nor the substantive dispute over Schenck's eligibility for benefits. In a letter to Ozark and ALPA, the NMB carefully clarified its role, stating in part:

> Should either of the parties determine that it is not appropriate to proceed with arbitration in this matter, this agency [the NMB] will take no action to compel such arbitration. That procedural question will have to be resolved before a forum other than the NMB. This agency's nomination of Mr. Garrett only provides a qualified arbitrator for the Schenk case should arbitration ultimately be pursued. Under the circumstances the NMB has no legitimate role in the resolution of the arbitrability question and should not be a party thereto.

Because the NMB lacked any power in this case and merely provided an arbitrator for the use of the disputants, no justiciable controversy existed between the NMB and Ozark. A party has standing to sue under Article III only if it "invoke[s] some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). Therefore, as NMB argues, it should not have been named a defendant in this lawsuit. *Radin*, 699 F.2d at 686 (1983).

There is also a matter of public policy that concerns us. Allowing an order to be entered against the NMB would force it to decide the appropriateness of each request for an arbitrator and to defend its decision in court. Such an order would seriously interfere with NMB's neutrality in labor-management relations, run counter to Congressional policies in creating NMB, and retard its statutory purpose. *UAW v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1186 (6th Cir.1983) (quoting *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir.1977)). "Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusory." *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1211 (6th Cir. 1982). Reducing the NMB's immunity and forcing it to decide whether each dispute is arbitrable would significantly undercut its impartiality and "impair its ability to constitute a significant force for conciliation." *International Association of Machinists and Aerospace Workers v. National Mediation Board*, 425 F.2d 527, 539 (D.C.Cir. 1970).

We conclude that no justiciable controversy existed involving the NMB and that policies favoring arbitration and mediation militate against the order enjoining the NMB.

IV.

Accordingly, the judgment in favor of Ozark and against Arthur J. Schenk, Jr., and the Air Line Pilots Association will be affirmed. The judgment against the National Mediation Board will be reversed. Costs in the appeal of Air Line Pilots Association, International and Arthur J. Schenk, Jr. in No. 85–2147 EM will be taxed in favor of the appellees. Costs in the appeal of the National Mediation Board, appellants, No. 85–2157 EM, will be taxed in favor of the appellants.