**S. Ezra AUSTERN and Esther Austern, Plaintiffs,**

v.

**The CHICAGO BOARD OPTIONS EXCHANGE, INC., Defendant.**

**No. 89 Civ. 0462 (MGC).**

United States District Court, S.D. New York.

July 31, 1989.

S. Ezra Austern, Brooklyn, N.Y., for plaintiffs.

Ashinoff, Rose & Korff, New York City by Reid L. Ashinoff and Mark S. Pomerantz, for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

S. Ezra Austern and Esther Austern sue the Chicago Board Options Exchange, Inc. ("CBOE"), for $608,000 in damages arising out of an arbitration award rendered by a CBOE-sponsored panel on October 24, 1986. CBOE has moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, the motion is granted.

## BACKGROUND

For purposes of this motion, the complaint is accepted as true. The opinion of the Honorable Charles P. Kocoras, United States District Judge for the Northern District of Illinois, in *Fried Trading Co. v. Austern*, No. 86 C 8223, 1988 WL 130620 (N.D.Ill. Nov. 30, 1988), is a part of the complaint. Fed.R.Civ.P. 10(c). The Austerns are bound by the findings of fact made by the district court in that opinion. *See Wilder v. Thomas*, 854 F.2d 605, 616 (2d Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989).

At the time of the events in question and until November of 1986, the Austerns were residents of Bnei Brak, Israel. On September 14, 1984, Fried Trading Company ("Fried") filed with CBOE a petition for arbitration, pursuant to a limited partnership agreement to which Mrs. Austern was a party. After the Austerns answered the petition, CBOE accepted the matter for arbitration. CBOE agreed that a panel of arbitrators would be chosen pursuant to CBOE guidelines, with a majority of the panel coming from outside of the securities industry. CBOE also agreed to attempt to accommodate the Austerns' schedule with a convenient hearing date, in recognition of the great distance they would have to travel to attend a hearing in Chicago.

In September of 1986, the Austerns withdrew their appearance, answer and counterclaim in the CBOE arbitration, after they learned that Fried was a differently configured partnership from the Fried Trading Company with which the Austerns had understood they would arbitrate. Nevertheless, on October 22 and 23, 1986, a panel of five arbitrators designated by CBOE conducted an arbitration hearing. None of the arbitrators was from outside the securities industry.

CBOE had attempted to provide the Austerns with notice of the hearing through the law firm of Sachnoff, Weaver and Rubenstein ("Sachnoff"), which was representing the Austerns in state court. On October 9, 1986, CBOE sent notice to Sachnoff. That same day, however, Sachnoff withdrew as counsel for the Austerns in state court. In addition, correspondence between the Austerns and CBOE dated September 26, 1986, suggests that the Austerns would be representing themselves before CBOE. Sachnoff acknowledged receipt of the notice on October 10, seven business days prior to the hearing date, and informed CBOE that while the firm no longer represented the Austerns, it would forward notice to them in Israel. Sachnoff indicated that the Austerns would receive the notice in Israel in four or five days. The Austerns did not receive any notice of the arbitration hearing from CBOE, and the hearing took place without their knowledge or presence. Judge Kocoras found that the Austerns were not provided adequate notice of the hearing as required by CBOE guidelines, which called for eight business days' notice of hearing to all parties. The hearing dates were impracticable in any event because they coincided with the Jewish holiday of Sukkot, which the Austerns observe.

The arbitration panel issued an award in favor of Fried. On October 29, 1986, Fried commenced a proceeding in the United States District Court for the Northern District of Illinois to confirm the award. Judge Kocoras denied Fried's petition for confirmation because CBOE had not provided adequate notice of the hearing to the Austerns. *Fried Trading Company v. Austern*, No. 86 C 8223 (N.D.Ill. Nov. 30, 1988).

In this action, the Austerns seek to recover damages for mental anguish and the expense of defending against Fried's confirmation action. They claim that CBOE's negligent failure to give notice of the arbitration proceeding caused these injuries. The Austerns also claim that CBOE violated their right to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Illinois Constitution. CBOE contends that the complaint should be dismissed because the acts of CBOE are protected by the quasi-judicial immunity that protects arbitrators and their sponsoring organizations from personal liability, and also because the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., provides the exclusive remedy for challenging arbitration awards. The Austerns argue that the conduct of which they complain falls outside the scope of arbitral immunity.

## DISCUSSION

Courts have generally protected arbitrators from suit for their conduct in arbitration proceedings. *See U.A.W. v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1185 (6th Cir.1983); *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1211 (6th Cir.1982); *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir.1977); *Cahn v. International Ladies' Garment Union*, 311 F.2d 113, 114–115 (3d Cir.1962) (per curiam); *Calzarano v. Liebowitz*, 550 F.Supp. 1389, 1390 (S.D.N.Y.1982). This quasi-judicial immunity has been expanded to protect associations, boards and other organizations sponsoring and administering arbitrations. *See Corey*, 691 F.2d at 1211; *Rubenstein v. Otterbourg*, 78 Misc.2d 376, 376, 357 N.Y.S.2d 62, 63–64. The Austerns contend that, since the acts of CBOE in this case were purely administrative in nature, and not a part of the decision-making process, CBOE is not entitled to immunity from this suit. But assigning the proper category to the conduct at issue is not a semantic exercise. The determination of whether CBOE's acts in this case fall within the

scope of quasi-judicial conduct requires an examination of the reasons for such protection.

There are two important policies that are promoted by according arbitrators immunity from suit. The first is the same policy as that underlying the doctrine of judicial immunity: the importance of protecting the integrity of the decision-making process from the fear of reprisals by dissatisfied litigants. *See Greyhound Lines,* 701 F.2d at 1186; *Tamari,* 552 F.2d at 781; *Corey,* 691 F.2d at 1209. Immunity is extended to those such as arbitrators who perform quasi-judicial functions because "[t]he functional comparability of the arbitrators' decision-making process and judgments to those of judges ... generates the same need for independent judgment, free from the threat of lawsuits. Immunity furthers this need." *Corey,* 691 F.2d at 1211. Secondly, "individuals ... cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." *Tamari,* 552 F.2d at 781. In order to develop and maintain a pool of qualified persons willing to act as arbitrators, it is important to protect arbitrators against personal liability.

These policies underlying arbitral immunity support an expansive treatment of the conduct included within the scope of protection. The social cost of precluding a small number of meritorious claims is outweighed by the burden that would be placed on arbitrators and their sponsors if they had to defend against frivolous suits.

The Austerns argue that the acts of which they complain—mailing notice of the hearing, selecting five arbitrators from the securities industry, choosing a hearing date—were not quasi-judicial but purely ministerial. The distinction, they argue, is that the acts themselves did not require the exercise of discretion and judgment. Thus, they liken these acts to the conduct of a CBOE porter in negligently leaving a puddle of soapy water in the hearing room.

The Austerns artificially divide the same function into two parts, one protected, the other beyond the scope of arbitral immunity, without reference to the impact of the conduct on the arbitration proceeding. Accurate functional analysis is an appropriate method of distinguishing between protected arbitral conduct and other acts which, like the porter's mopping of the hearing room floor, are clearly unrelated to the arbitration proceeding because they do not have any effect on either the process or the award. *Cf. Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988) (In the judicial context, "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches."). Notice of the proceeding, selection of the arbitrators, and the choice of a hearing date are all integrally related to the process of arbitration and cannot logically be denied the same protection.

In support of their position, the Austerns rely on a decision of a California state court. In *Baar v. Tigerman,* 140 Cal. App.3d 979, 189 Cal.Rptr. 834 (1983), the court declined to grant quasi-judicial immunity to an arbitrator or his sponsor against a suit for breach of an express contract to render an award within a fixed period of time. The court distinguished the case from those in which quasi-judicial immunity has been granted to sponsors by deeming the sponsor's failure properly to oversee the arbitration process as an administrative and not a discretionary function. *Id.* at 987, 189 Cal.Rptr. at 840. Not only is *Baar* not binding on this court, but its reasoning is not persuasive. Furthermore, the protection of the Federal Arbitration Act was not available in that case.

■ In any event, because of the corrective review provided by the Federal Arbitration Act, the Austerns cannot maintain this action. By defeating confirmation of the arbitration award, the Austerns have already obtained a remedy from another federal court for the wrongs of which they complain. With respect to claims within its purview, the Federal Arbitration Act provides the exclusive remedy for challenging conduct that taints an arbitration award. *See Foster v. Turley,* 808 F.2d 38, 41–42 (10th Cir.1986); *Corey,* 691 F.2d at 1211–

1213; *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1202 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978). The availability of direct review of the arbitration award also buttresses the appropriateness of applying the doctrine of arbitral immunity to preclude this collateral proceeding.

█ Finally, the Austerns argue that immunity does not protect CBOE from federal and state constitutional claims. But "the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'" *N.C.A.A. v. Tarkanian*, — U.S. —, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)). Only state action is subject to scrutiny under the Fourteenth Amendment's Due Process Clause. *Tarkanian*, 109 S.Ct. at 461; *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Although the Illinois due process clause is not expressly limited to state action, the Illinois Supreme Court has so interpreted it. *USA I Lehndorff Vermoegensverwaltung GmbH & Cie v. Cousins Club, Inc.*, 64 Ill.2d 11, 20–21, 348 N.E.2d 831, 834–835 (1976). Since the conduct of CBOE did not in any way constitute state action, the Austerns do not state a claim for violation of their constitutional rights to due process.

Accordingly, the Austerns' complaint is dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.