**S. Ezra AUSTERN and Esther Austern, Plaintiffs–Appellants,**

v.

**The CHICAGO BOARD OPTIONS EXCHANGE, INC., Defendant–Appellee.**

No. 520, Docket 89–7792.

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1990.

Decided March 15, 1990.

S. Ezra Austern, Brooklyn, N.Y., for plaintiffs-appellants.

Reid L. Ashinoff, New York City (Mark S. Pomerantz, Ashinoff, Ross & Korff, New York City, of counsel), for defendant-appellee.

Before MESKILL and NEWMAN, Circuit Judges, and POLLACK,* District Judge.

MESKILL, Circuit Judge:

The central question presented by this appeal is whether a commercial organization sponsoring a contractually agreed upon arbitration is immune from civil liability for improperly noticing the arbitration hearing and improperly selecting the arbitration panel.

Plaintiffs S. Ezra and Esther Austern (the Austerns) appeal from a judgment entered in the United States District Court for the Southern District of New York, Cedarbaum, J., dismissing their complaint against defendant Chicago Board Options Exchange, Inc. (CBOE) pursuant to Fed.R. Civ.P. 12(b)(6) on the ground of arbitral immunity. The complaint sought compensation for expenses incurred in defending an arbitration confirmation proceeding in the United States District Court for the Northern District of Illinois, Kocoras, J. On appeal, the Austerns contend principally that the conduct of the CBOE, the commercial organization that sponsored the arbitration, fell outside the scope of arbitral immunity.

The judgment is affirmed.

## BACKGROUND

For purposes of this appeal, we accept, as we must, the factual allegations contained in appellants' complaint as true.

* Hon. Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

*See, e.g., Corcoran v. American Plan Corp.,* 886 F.2d 16, 17 (2d Cir.1989); *Tucker v. Bay Shore Union Free School Dist.,* 873 F.2d 563, 563 (2d Cir.1989); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989). The facts of this case are thoroughly set forth in the district court's opinion, reported at 716 F.Supp. 121 (S.D.N.Y.1989). Therefore, we shall briefly recount only those facts relevant to the present appeal.

Fried Trading Company (Fried), an options trading partnership, is a member organization of the CBOE. Pursuant to an arbitration clause in the options trading partnership agreement between Fried and the Austerns, Fried, on September 14, 1984, filed a petition for arbitration with the CBOE for monies due under the agreement.[1] The Austerns, who until November 1986 were residents of Bnei Brak, Israel, answered the petition on November 26, 1984 and soon thereafter the CBOE accepted the matter for arbitration.

The arbitration rules of the CBOE, which governed both the selection of the arbitration panel and the procedures to be followed, mandated that (1) the panel be composed of five arbitrators, "at least a majority of whom shall *not* be from the securities industry," and (2) "[n]otice of the time and place for the initial hearing . . . be given at least eight (8) business days prior to the date fixed for the hearing by personal service, registered or certified mail to each of the parties." The CBOE also agreed to attempt to accommodate the Austerns' schedule with a mutually convenient hearing date "due to the great distance Respondents [were required] to travel to attend [the] hearing."

In September 1986, the Austerns withdrew their appearance, answer and coun-terclaim. Nevertheless, on October 22 and 23, 1986, a panel of five arbitrators designated by the CBOE conducted an *ex parte* hearing and issued an award of approximately $158,000 in favor of Fried. None of the arbitrators was from outside of the securities industry and, despite attempts to provide appellants with notice of the hearing, the Austerns never received any such notice from the CBOE. The hearing apparently took place without either appellants' presence or knowledge.

Soon thereafter, on October 29, 1986, Fried commenced a proceeding in the United States District Court for the Northern District of Illinois to confirm the award pursuant to section 9 of the Federal Arbitration Act, 9 U.S.C. § 9. However, because the CBOE had failed to provide the Austerns with adequate notice of the arbitration hearing, Judge Kocoras ratified the findings of Magistrate Balog, to whom that matter had been assigned, and denied Fried's petition for confirmation. *See Fried Trading Co. v. Austern,* No. 86 C 8223, 1988 WL 130620 (N.D.Ill. Dec. 1, 1988) (LEXIS, Genfed library, Dist file; WESTLAW, Federal Dct Database).[2]

On January 20, 1989, the Austerns filed suit in the United States District Court for the Southern District of New York seeking to recover damages for mental anguish and the expense of defending against Fried's unsuccessful confirmation action. In a nine count complaint the Austerns claimed that the CBOE's negligent empaneling and scheduling of the arbitration proceedings caused them injury in the amount of $612,-000. The Austerns also claimed that the CBOE's failure to provide them with adequate notice of the arbitration hearing violated their right to procedural due process under the Fourteenth Amendment to the

---

1. Although S. Ezra Austern was not a signatory to the partnership agreement, Judge Cedarbaum properly accepted the factual finding of Judge Kocoras in *Fried Trading Co. v. Austern,* No. 86 C 8223, 1988 WL 130620 (N.D.Ill. Dec. 1, 1988) (LEXIS, Genfed library, Dist file; WESTLAW, Federal Dct Database)—the underlying confirmation proceeding that was incorporated into the pleadings by attachment and reference thereto, *see* Fed.R.Civ.P. 10(c)—that both Esther, who was a signatory, and Ezra were bound by the terms of that agreement. *See Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 113 (2d Cir.1982). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1327 (1969).

2. At oral argument, the parties indicated that the CBOE had scheduled a second arbitration hearing for January 15, 1990.

United States Constitution and Article I, Section 2 of the Illinois Constitution.

In an opinion and order dated July 31, 1989, Judge Cedarbaum dismissed the Austerns' complaint in total pursuant to Fed.R.Civ.P. 12(b)(6). The district court ruled that the CBOE, as the organization sponsoring the arbitration, was shielded from civil liability under the doctrine of arbitral immunity. 716 F.Supp. at 123–24. In the alternative, the court ruled that section 10 of the Federal Arbitration Act "provides the exclusive remedy for challenging conduct that taints an arbitration award." *Id.* at 124. Finally, the court found that the conduct of the CBOE did not constitute state action for either federal or state due process purposes. *Id.* at 125. This appeal followed.

## DISCUSSION

On appeal, as in the district court, the Austerns contend principally that the acts of which they complain, "being of an administrative or ministerial nature, d[o] not merit [arbitral] immunity." We disagree and, consequently, affirm the dismissal of appellants' complaint.

### A. *Standard of Review*

■ Dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling of law subject to *de novo* review, *Leidholdt v. L.F.P. Inc.,* 860 F.2d 890, 893 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1988); *Wells v. Walker,* 852 F.2d 368, 369–70 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1988); *Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987), and will be upheld on appeal only if "'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief,'" *Philips Business Sys., Inc. v. Executive Communications Sys., Inc.,* 744 F.2d 287, 290 (2d Cir.1984) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted)).

### B. *Arbitral Immunity*

■ Absolute immunity, "justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988), has long shielded judges from damages liability for actions taken in the exercise of their judicial functions. *See Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872); *see also Stump v. Sparkman,* 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Heimbach v. Village of Lyons,* 597 F.2d 344, 347 (2d Cir.1979). This comparatively sweeping form of immunity has also been extended to executive branch officials who perform either quasi-judicial functions, *see Butz v. Economou,* 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978) (administrative law judge and various agency officials), or prosecutorial functions "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *accord Rudow v. City of New York,* 822 F.2d 324, 327–30 (2d Cir.1987); *Barr v. Abrams,* 810 F.2d 358, 360–62 (2d Cir.1987); *Yaselli v. Goff,* 12 F.2d 396, 406 (2d Cir.1926) (holding special assistant to the Attorney General of the United States absolutely immune from a civil action for malicious prosecution on principles of public policy), *aff'd,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (per curiam). As with judicial immunity, which "protect[s] the finality of judgments [by] discouraging inappropriate collateral attacks ... [and] also protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants," *Forrester,* 484 U.S. at 225, 108 S.Ct. at 543 (citing *Bradley,* 80 U.S. (13 Wall.) at 348), the scope of quasi-judicial immunity is defined not by the identity of the actor but by the nature of the function performed, namely freeing the adjudicative process and those involved therein from harassment or intimidation. *See Butz,* 438 U.S. at 512, 98 S.Ct. at 2913.

Based primarily on the "functional comparability" of the arbitrator's role in a contractually agreed upon arbitration proceeding to that of his judicial counterpart, the Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral capacity. *See Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir.1987); *Ozark Air Lines, Inc. v. National Mediation Board*, 797 F.2d 557, 564 (8th Cir.1986); *Austin Municipal Securities, Inc. v. National Ass'n of Securities Dealers, Inc.*, 757 F.2d 676, 686–91 (5th Cir.1985); *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1208–11 (6th Cir.1982); *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir.1977); *Cahn v. International Ladies' Garment Union*, 311 F.2d 113, 114–15 (3d Cir.1962) (per curiam); *accord Calzarano v. Liebowitz*, 550 F.Supp. 1389, 1390–91 (S.D.N.Y.1982). As the Sixth Circuit stated in *Corey:*

> The functional comparability of the arbitrators' decision-making process and judgments to those of judges and agency hearing examiners generates the same need for independent judgment, free from the threat of lawsuits. Immunity furthers this need. As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.

691 F.2d at 1211.

We are persuaded by these policy concerns and agree that the nature of the function performed by arbitrators necessitates protection analogous to that traditionally accorded to judges. Furthermore, we note that "individuals ... cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." *Tamari*, 552 F.2d at 781. Accordingly, we hold that arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process.

■ The appellants, while acknowledging the existence of arbitral immunity, contend that the acts of which they complain—*i.e.*, the CBOE's improper notice and scheduling of the arbitration hearing and improper selection of five arbitrators from the securities industry—were ministerial in nature rather than part of the actual decision-making process and, as such, were outside the scope of arbitral immunity. We disagree.

At the threshold, we note, as have both the Sixth and Ninth Circuits, that

> [e]xtension of arbitral immunity to encompass boards [that] sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illus[ory]. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.

*Corey*, 691 F.2d at 1211 (quoted in *Ozark Air Lines*, 797 F.2d at 564). The CBOE, as the commercial sponsoring organization, is therefore entitled to immunity for all functions that are integrally related to the arbitral process. Furthermore, semantically categorizing the challenged acts as "ministerial" or administrative, as opposed to "discretionary," in large part misses the mark, since the scope of arbitral immunity is "defined by the *functions* it protects and serves." *Forrester*, 484 U.S. at 227, 108 S.Ct. at 544.

Contrary to appellants' contention, the acts complained of here—defective notice and improper selection of the arbitration panel—were not only performed directly in connection with the CBOE's management of contractually agreed upon arbitration, but, we believe, were sufficiently associated with the adjudicative phase of the arbitration to justify immunity. Reducing the CBOE's immunity based on the arbitral deficiencies present here would merely serve to discourage its sponsorship of future arbitrations—a policy that is strongly encouraged by the Federal Arbitration Act. *See* 9 U.S.C. §§ 2, 3, 4; *see also Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct.

927, 941, 74 L.Ed.2d 765 (1983) ("Section 2 [of the Federal Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). On the facts of this case, we are unwilling to undermine this policy by parsing the arbitration process. Accordingly, we conclude, as did the district court, that the CBOE is immune from liability in damages for its conduct in sponsoring the arbitration proceedings in question.

Because we base our decision solely on the doctrine of arbitral immunity, it is unnecessary to address appellants' claim of remedial non-exclusivity of the Federal Arbitration Act, 9 U.S.C. §§ 1–14.

## CONCLUSION

As the CBOE is shielded from civil liability for the challenged acts under the doctrine of arbitral immunity, we affirm the judgment of the district court dismissing the Austerns' complaint.