USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1146

 NEW ENGLAND CLEANING SERVICES, INC.,

 Plaintiff, Appellant,

 v.

 AMERICAN ARBITRATION ASSOCIATION,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Morris E. Lasker, Senior U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Coffin and Campbell, Senior Circuit Judges.
 
 
 
 
 Richard D. Wayne with whom John P. Martin and Hinckley, Allen
& Snyder were on brief for appellant, New England Cleaning
Services, Inc.
 Kay H. Hodge with whom Ronald M. Jacobs and Stonehan, Chandler
& Miller were on brief for appellee, American Arbitration
Association.

December 20, 1999

 
 

 CAMPBELL, Senior Circuit Judge. Plaintiff-appellant New
England Cleaning Services, Inc. ("NECS") appeals from the district
court's dismissal of its complaint for an injunction and damages
against defendant-appellee American Arbitration Association ("the
AAA"). NECS brought its complaint against the AAA as part of its
action for declaratory relief against Local 254, Service Employees
International Union, AFL-CIO ("SEIU" or "the union"), seeking to
forestall the latter from proceeding to arbitrate a labor dispute
with NECS. NECS contends that the AAA, by processing the SEIU's
demand for arbitration despite NECS's protestations that there was
then in force no valid agreement to arbitrate (a position
subsequently upheld by the district court), violated various
provisions of Massachusetts law. The district court allowed the
AAA's motion to dismiss NECS's complaint on the ground that the
AAA's actions were protected by arbitral immunity. We affirm.
 BACKGROUND
 We take the following facts from NECS's complaint and
attached documents. See LaChappelle v. Berkshire Life Ins. Co.,
142 F.3d 507, 509 (1st Cir. 1998).
 NECS is a maintenance and service provider. On March 14,
1994, it entered into a collective bargaining agreement ("the
Agreement") with the SEIU. The Agreement contained a section
titled "Grievances," which described a four-step procedure
governing "[a]ll disputes arising out of this Agreement or its
application to any situation that may arise during the term of this
Agreement." The final step of the grievance procedure provided for
binding arbitration under the rules of the AAA, a not-for-profit
organization that provides voluntary dispute resolution services.
 By its terms, the Agreement was effective until August
31, 1996, and would continue in effect thereafter until terminated
by either party. A party could terminate the Agreement if it did
so in writing more than 60 days before the stated expiration date. 
On or about September 6, 1994, NECS sent the SEIU a letter stating
that it was terminating the Agreement.
 Beginning in early June, 1998, the SEIU filed several
grievances with NECS. NECS denied the grievances as untimely,
arguing that it had effectively terminated the Agreement in 1994. 
On August 3, 1998, the SEIU filed a demand for arbitration with the
AAA, claiming that NECS had "improperly" terminated the Agreement. 
On August 7, having received notice of this demand from the AAA,
NECS wrote a letter to the AAA stating that no collective
bargaining agreement between NECS and the SEIU existed, and that
therefore the AAA lacked jurisdiction or authority over NECS. NECS
attached to this letter copies of the Agreement and its termination
letter of September 6, 1994.
 The AAA continued to process the SEIU's demand, however,
and sent NECS an invoice for services rendered in connection
therewith. Despite NECS's written warning that it planned to file
a complaint in the federal district court, the AAA continued to
proceed toward arbitration, and scheduled a hearing on the SEIU's
demand.
 On September 17, 1998, NECS filed a complaint in the
district court against the SEIU and the AAA. Against the SEIU, it
sought a declaration pursuant to section 301 of the Taft-Hartley
Act, 29 U.S.C. 185, that there was no collective bargaining
agreement in force between NECS and the SEIU and that NECS was not
obligated to submit to arbitration. Against the AAA, NECS sought
an injunction preventing further processing of the demand for
arbitration as well as damages under M.G.L. c. 93A and c. 12, 11
for compelling NECS to arbitrate. 
 Following an expedited evidentiary hearing, the district
court held that NECS had properly terminated the Agreement, that
there was no collective bargaining agreement presently in effect
between it and the SEIU, and that the issue of the existence of the
Agreement was not arbitrable. In a companion memorandum and order,
the court dismissed NECS's complaint against the AAA on the ground
that its decision to process SEIU's demand for arbitration was
protected by arbitral immunity. NECS appeals from the latter
ruling. 
 DISCUSSION
 The court of appeals applies a de novo standard of review
to a district court's allowance of a motion to dismiss for failure
to state a claim. LaChappelle, 142 F.3d at 509. Here, NECS
maintains that the district court erred in applying the standard
prescribed by Fed. R. Civ. P. 12(b)(6) and in holding that the
AAA's decision to process the demand for arbitration was protected
by arbitral immunity. Specifically, NECS argues that the trial
court was obligated to take as true the facts pled in the
complaint, which included the allegation that there was no
agreement to arbitrate in effect at the relevant time. Without
such an agreement, it contends, the AAA had no jurisdiction to
process the demand for arbitration. And without jurisdiction, the
AAA did not possess arbitral immunity.
 The AAA argues that arbitral immunity protects its
processing of a facially valid demand for arbitration pursuant to
a collective bargaining agreement that names it as the arbitral
agency. It maintains that the SEIU's demand for arbitration met
this standard, in that it (1) stated that NECS had "improperly
terminated" the Agreement and "failed to meet with the union" in
accordance with the prescribed grievance procedure, and (2)
attached a copy of the Agreement, which explicitly provided for
binding arbitration under the rules of the AAA. The AAA contends
that it followed its own internal rules and procedures in billing
the parties, notifying NECS of the demand, selecting an arbitrator,
and scheduling a hearing date. Moreover, it argues that the system
functioned appropriately in this case: upon NECS's complaint, the
district court resolved the issue of the AAA's jurisdiction, and
the AAA heeded the ensuing court order and stayed the arbitration
proceedings.
 Settled case law as well as federal policy encouraging
labor arbitration favors the AAA's position. First, we reject
NECS's assertion that the district court erroneously failed to
comply with Fed. R. Civ. P. 12(b)(6) when it did not take as true
all of NECS's allegations regarding the Agreement. NECS cannot
preclude dismissal of its complaint under that rule simply by
alleging that it had terminated the Agreement and had no collective
bargaining agreement with the SEIU in effect at the time of the
grievances. Such allegations are not assertions of fact, but
rather involve legal issues and conclusions--indeed, the ultimate
disputed issues presented in NECS's action against the SEIU. The
court is not required to accept legal conclusions as true when
considering a motion to dismiss. See Abbott v. U.S., 144 F.3d 1,
2 (1st Cir. 1998); 2A Moore's Federal Practice, 12.34[1][b]. 
 Second, the district court correctly concluded that the
AAA's decision to process the demand was protected by arbitral
immunity. "Because an arbitrator's role is functionally equivalent
to a judge's role, courts of appeals have uniformly extended
judicial and quasi-judicial immunity to arbitrators." Olson v.
National Ass'n of Securities Dealers, 85 F.3d 381, 382-83 (8th Cir.
1996). As with judicial and quasi-judicial immunity, arbitral
immunity is essential to protect decision-makers from undue
influence and protect the decision-making process from reprisals by
dissatisfied litigants. See id. In proper circumstances,
organizations that sponsor arbitrations, as well as arbitrators
themselves, enjoy this immunity from civil liability. See Honn v.
National Ass'n of Securities Dealers, Inc., 182 F.3d 1014, 1017
(8th Cir. 1999); Hawkins v. National Ass'n of Securities Dealers
Inc., 149 F.3d 330, 332 (5th Cir. 1998); Corey v. New York Stock
Exchange, 691 F.2d 1205, 1208-11 (6th Cir. 1982). 
 A sponsoring organization's immunity extends to the 
administrative tasks it performs, insofar as these are integrally
related to the arbitration. See Austern v. Chicago Bd. Options
Exchange, Inc., 898 F.2d 882, 886 (2d Cir. 1990) (defective notice
and improper selection of arbitration panel were sufficiently
associated with adjudicative phase of arbitration to justify
immunity). See also Olson, 85 F.3d at 383 (immunity protects "all
acts within the scope of the arbitral process," even if arbitrator
fails to follow its own internal rules). Here, the AAA's
administrative acts of which NECS complains -including selecting an
arbitrator, billing NECS for its services, and scheduling a
hearing -were sufficiently related to the arbitration to be
protected by immunity. 
 NECS points out that the district court determined that
the AAA lacked jurisdiction or authority to adjudicate the dispute,
and contends that therefore the AAA was not protected by arbitral
immunity. Judicial immunity applies, however, unless there is a
"clear absence" of jurisdiction. See Stump v. Sparkman, 435 U.S.
349, 356-57 (1978); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). 
We see no reason not to adopt the same parameter for arbitral
immunity. See Tamari v. Conrad, 552 F.2d 778, 780-81 (7th Cir.
1977) ("arbitral immunity should be extended to cases where the
authority of an arbitrator to resolve a dispute is challenged");
Durden v. Lockheed-Georgia Co., 1985 WL 56794 (N.D. Ga., June 18,
1985); Raitport v. Provident Nat. Bank, 451 F. Supp. 522, 527 (E.D.
Pa. 1978); Dennis R. Nolan & Roger I. Abrams, Arbitral Immunity, 11
Indus. Rel. L. J. 228, 239-40 (1989). The demand presented by the
SEIU stated that the Agreement had been wrongfully terminated and
attached the Agreement referencing the AAA as arbitrator. These
papers were not so deficient on their face as to signal a "clear
absence" of jurisdiction. That NECS ultimately secured a
declaration that the Agreement had been effectively terminated does
not mean that the SEIU's demand was not facially valid so that
jurisdiction was clearly lacking.
 Adopting NECS's position would require arbitral
organizations, not courts or arbitrators, to themselves resolve
what might well turn out to be significant threshold legal issues
long before any hearing. In this case, the AAA would have had to
decide not merely whether there was a facially valid demand, but
the legal effect of the demand and whether an arbitrator in fact
had jurisdiction to determine whether NECS's termination of the
Agreement was effective. To make such a judgment, the AAA would
have had to examine the breadth of the arbitration clause in the
Agreement and the effectiveness of NECS's termination. NECS
implies that the answers to these questions were so obvious as to
enable the AAA to dispose of them routinely, saving NECS the time
and trouble of litigating arbitrability in court. Yet it took a
nine-page memorandum and order by the district court and a full
opinion of this court to deal with the legal issues involved. We
think it abundantly clear that the resolution of the arbitrability
issue was not facially obvious. Forcing the AAA itself to
preliminarily address potentially complex legal issues would not
only impose an unwelcome burden, but would interfere with the
organization's neutrality and likely add further cost and delay to
the arbitral process. See Ozark Air Lines, Inc. v. National
Mediation Bd., 797 F.2d 557, 564 (8th Cir. 1986). The course
followed by the AAA forced the arbitrability issue to be decided
either by an arbitrator or, at NECS's instance, the court--the two
tribunals logically equipped to handle the issue.
 Not least, failure to extend immunity to the AAA in these
circumstances could discourage it from sponsoring future
arbitrations. See Austern, 898 F.2d at 886-87; Tamari, 552 F.2d at
781. Reluctance by the AAA or similar organizations to arrange
arbitrations would impede the implementation of federal policy
favoring arbitration of labor disputes. See 9 U.S.C. 2, 3, 4;
Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1,
24 (1983) ("Section 2 [of the Federal Arbitration Act] is a
congressional declaration of a liberal federal policy favoring
arbitration agreements, notwithstanding any state substantive or
procedural policies to the contrary."). Accordingly, we agree with
the district court that the AAA is protected by arbitral immunity
from liability for its actions in this matter. 
 Because we decide on the basis of immunity, there is no
need to discuss the merits of NECS's claims under M.G.L. c. 93A and
c. 12, 11. 
 Affirmed.