06-3890-cv
Rolon v. Henneman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: October 2, 2007                    Decided: February 25, 2008)

Docket No. 06-3890-cv

_____

DENNIS ROLON,

*Plaintiff-Appellant*,

− v. −

ROBERT HENNEMAN and ARI MOSKOWITZ,

*Defendants-Appellees.*

_____

Before:    NEWMAN, SOTOMAYOR and WESLEY, *Circuit Judges*.

_____

We hold that testifying witnesses in police disciplinary hearings of the type at issue here have absolute immunity from suit for their testimony.

_____

MICHAEL H. SUSSMAN, Goshen, New York, *for plaintiff-appellant*.

JOHN F. O'REILLY, Elmsford, New York, *for defendant-appellee Robert Henneman*.

BRIAN SOKOLOFF (Miranda Sokoloff Sambursky, *on the brief*), Mineola, New York, *for defendant-appellee Ari Moskowitz*.

1

SOTOMAYOR, *Circuit Judge*:

This appeal principally concerns whether acting Police Chief Robert Henneman ("Henneman"), as a witness testifying at police disciplinary hearings, is absolutely immune from civil liability for offering allegedly perjurious testimony at those hearings. Plaintiff-appellant Dennis Rolon ("Rolon"), a police officer in the town of Wallkill, New York, also alleges that police officer Ari Moskowitz ("Moskowitz") falsely accused him of misconduct and caused him to suffer humiliation and economic loss. We AFFIRM the district court's dismissal of the claims against both Henneman and Moskowitz on the ground that Henneman is absolutely immune from civil suit based on his testimony at the disciplinary hearings, and on the ground that Rolon failed to state a constitutionally cognizable deprivation of liberty or property rights as a result of Moskowitz's alleged false accusations.

## BACKGROUND

The facts of this case as they relate to each defendant are set forth more fully in the district court opinions, familiarity of which is presumed. *Rolon v. Henneman* ("*Rolon I*"), 389 F. Supp. 2d 517, 517-18 (S.D.N.Y. 2005); *Rolon v. Henneman* ("*Rolon II*"), 443 F. Supp. 2d 532, 534-35 (S.D.N.Y. 2006). For purpose of this appeal, following a grant of judgment on the pleadings, we accept as true the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

### A.

Rolon has served as a police officer in Wallkill, New York, since 1997. On April 7, 2000, then-Chief of Police James Coscette signed a notice of disciplinary charges against Rolon

(the "April discipline"), specifying that on February 19, 2000, when Henneman asked Rolon a series of questions concerning a harassment claim reported by Police Officer Paul Besser, Rolon replied using "coarse, violent, profane, insolent and/or abusive" language, and refused to respond to Henneman's inquiry. Coscette suspended Rolon without pay on April 10, 2000, for an indefinite period of time pending resolution of the charges. Rolon subsequently served a five-day unpaid suspension relating to this matter.

In May 2000, Henneman replaced Coscette and became Acting Chief of the Town of Wallkill Police Department. Three months later, in August 2000, Henneman served Rolon with a second notice of discipline (the "August discipline"). This notice contained nine charges of misconduct and fifteen specifications arising from events that took place between May 10 and July 24, 2000. Several of these alleged incidents of misconduct were not witnessed by Henneman but were reported to him by Moskowitz. Pursuant to this second notice of discipline, Henneman suspended Rolon without pay pending resolution of the charges.

**B.**

Prior to the initiation of the August disciplinary proceedings, on May 1, 2000, Rolon filed suit in the United States District Court for the Southern District of New York (Conner, *J.*), alleging that defendants Coscette and Henneman, among others, had violated his constitutional right to due process. Moskowitz was not named as a defendant in this suit.

On January 23, 2001, the parties reached a settlement and, with respect to the named defendants, Rolon agreed to a general release of claims arising from the April and August disciplinary actions. The settlement, however, did not reach the issue of Rolon's entitlement to back pay; rather, the parties agreed to submit this issue to arbitration. The police department and

3

Rolon also agreed to submit the August disciplinary charges to arbitration, pursuant to the terms of the Collective Bargaining Agreement ("CBA") between the Town of Wallkill and the Town's Police Benevolent Association.

## C.

The August discipline charges were considered during arbitration hearings held on fourteen days between January 24 and August 31, 2001. Henneman and Moskowitz both provided testimony at the arbitral hearings. During Moskowitz's cross-examination, the arbitrator directed Moskowitz to produce his personal notebooks for the period of February 1 through August 23, 2000. Moskowitz left the hearing with the intention to retrieve the notebooks, explaining that he had taken them home during lunch. He failed to return, and the Town refused to order Moskowitz to return with the notebooks. Because of Moskowitz's actions, the arbitrator struck his testimony in its entirety.

In a sixty-page decision and award dated February 15, 2002, the arbitrator found that neither Henneman nor Moskowitz provided truthful or credible testimony, and that Henneman's personal hostility toward Rolon motivated many of his actions as Acting Chief of the Department. The arbitrator found Rolon guilty of only three charges of misconduct and ordered two days' suspension without pay and oral counseling.[1] Rolon was found not guilty of the remaining charges and was ordered reinstated to the police force with full back pay and

---

[1] Rolon was found guilty of charges that he (1) failed timely to comply with directives from Acting Chief Henneman ordering Rolon to move his vehicle from the spot in which it was parked; (2) failed timely to respond to a written directive from Henneman ordering Rolon to answer certain questions regarding an arrest he made; and (3) "prepared a memorandum disrespectful of [his] superior, . . . Henneman . . . in which [Rolon] accuse[d] . . . Henneman of 'carelessness and stupidity.'"

4

restoration of his benefits.

## D.

On August 13, 2002, Rolon filed suit under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York (McMahon, *J.*). Rolon alleged that by "[bearing] false witness" against him, Henneman and Moskowitz caused him anguish and injury, intentionally violated his right to due process of law, and abused their supervisory positions. The injury he alleged included humiliation and economic loss in the form of lost overtime pay. Rolon also claimed that Moskowitz lied to Henneman about Rolon's misconduct, which led to the preferment of disciplinary charges and caused Rolon emotional distress.

In response, Henneman and Moskowitz moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), claiming that, as a result of the January 2001 settlement, Rolon's claims were barred by res judicata. In the alternative, Henneman and Moskowitz claimed either they were protected by qualified or absolute immunity, or Rolon failed to state a cognizable claim for the denial of any substantive due process rights. The district court granted Henneman judgment on the pleadings, ruling that "absolute immunity attaches to Henneman's witness testimony at the arbitration proceedings at issue" because "testifying witnesses, including police officers, are entitled to absolute immunity from liability under § 1983 based on their testimony." *Rolon I*, 389 F. Supp. 2d at 519. In a subsequent opinion—which was delayed in issuing by Moskowitz's military service—the district court granted Moskowitz judgment on the pleadings. The district court first ruled that Moskowitz was not entitled to absolute immunity as a testifying witness because his testimony was struck in its entirety by the arbitrator and,

5

"[a]ccordingly, there is no testimony to which immunity can attach." *Rolon II*, 443 F. Supp. 2d at 536. Second, the district court interpreted Rolon's claim that Moskowitz lied to Henneman and initiated false charges against him as comprising two separate claims, one for malicious prosecution and the other for fabrication of evidence. *Id.* at 537. With respect to the malicious prosecution claim, the district court found that Moskowitz was not eligible for absolute immunity because he was a "complaining witness." *Id.* Although Moskowitz may have been entitled to qualified immunity by virtue of this role, the district court found it unnecessary to reach the question because it found that Rolon failed to state a cognizable constitutional claim. Claims of malicious prosecution, the district court observed, are limited to the criminal arena, and "[o]nly those malicious prosecution claims that implicate Fourth Amendment rights can be brought under § 1983." *Id.* at 538 (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Because Rolon did not face criminal charges and was not arrested or otherwise detained, the district court concluded that his Fourth Amendment rights were not implicated and that Rolon failed to state a claim for malicious prosecution under § 1983. *Id.*

With respect to Rolon's claim for fabrication of evidence, the district court explained that the Second Circuit has only recognized a constitutional right "'not to be deprived of *liberty* as a result of the fabrication of evidence by a government officer acting in an investigation capacity.'" *Id.* (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)). The district court rejected Rolon's argument that deprivation of a property interest caused by fabrication of evidence must also give rise to a due process claim. *Id.* at 539. It further noted that even were Rolon's claim cognizable, such a right was not clearly established in 2000 when Moskowitz made the allegedly false accusations. Thus, under the doctrine of qualified immunity, Rolon

6

could not prevail against Moskowitz. *Id.* at 539-40. In closing, the court noted that its dismissal "does not mean that [it] condones Moskowitz's conduct—indeed, it was truly contemptible. It simply means that plaintiff must avail himself of other means of redress." *Id.* at 540.

This appeal followed.

## DISCUSSION

As in the district court, Rolon principally contends on appeal that Henneman is not entitled to absolute immunity and that he asserted a valid § 1983 claim against Moskowitz. We disagree.

### I. Jurisdiction

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. Contrary to Henneman's assertions, Rolon's appeal of the district court's dismissal of the claim against him was timely. The date triggering the start of Rolon's thirty days to file a notice of appeal ran from the day, August 4, 2006, the district court entered its final judgment disposing of the entire case—when it entered Moskowitz's judgment on the pleadings. *See Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 128 (2d Cir. 2000) (holding that a "final" judgment is one that conclusively determines the pending claims of all parties to the litigation, unless the district court directs entry of a final judgment as to the dismissed claims or parties pursuant to Federal Rule of Civil Procedure 54(b)). Rolon filed this appeal twelve days after the final judgment was entered, and it is thus timely. *See* Fed. R. App. P. 4(a)(1).

### II. Absolute Immunity

The Supreme Court has extended absolute immunity to police officers testifying at judicial proceedings on the ground that this type of immunity existed at common law for citizen-

7

witnesses.  It reasoned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce . . . self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983).  Such self-censorship may "deprive the finder of fact of candid, objective, and undistorted evidence."  *Id.*  Yet, the Court also acknowledged the danger that a police officer or other witness may provide purposefully false testimony and escape liability.  *Id.* at 345.  To balance against this risk, the Court emphasized the presence of "truthfinding safeguards of the judicial process," *id.*, and rejected the contention that absolute immunity should only apply to private witnesses because "functional categories, not . . . the status of the defendant" control the immunity analysis, *id.* at 342.

Because absolute immunity is "justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," *Forrester v. White*, 484 U.S. 219, 227 (1988), in *Austern v. Chicago Board of Options Exchange, Inc.*, 898 F.2d 882 (2d Cir. 1990), we extended the common law protection of immunity accorded to judges to arbitrators in contractually-agreed upon arbitration proceedings.  We reasoned:

> We are persuaded by the[] policy concerns [of the need for independent judgment, protection from undue influence, and protection from reprisals by dissatisfied litigants,] and agree that the nature of the function performed by arbitrators necessitates protection analogous to that traditionally accorded to judges. Furthermore, we note that individuals cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit.  Accordingly, we hold that arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process.

*Id.* at 886 (internal quotation marks and citation omitted).  Rolon urges that our holding in *Austern* should represent the limit of absolute immunity conferred to participants in the

8

arbitration process; he argues that there is no sound basis for extending the absolute immunity doctrine to witnesses testifying at police disciplinary hearings of the type involved in this case. We do not agree.

As we suggested in *Austern*, the truth-seeking function of arbitration is no less robust than that of the judicial process itself. *Id.* Similar to a fact-finder in the judicial process, the arbitrator here had to determine the propriety of the charges listed in Rolon's Notice of Discipline of August 2000. The policy rationale for witness immunity, as articulated by the Supreme Court in *Briscoe*, applies with equal or near equal force in the arbitral context: "[T]he truthfinding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.'" 460 U.S. at 333-34 (citation omitted). Indeed, in this case, after weighing Henneman's testimony, the arbitrator did not find it credible and dismissed the majority of the charges against Rolon.

In addition to alike policy considerations, Henneman performed substantially the same function as witnesses in judicial proceedings with nearly identical procedural safeguards: he took an oath, offered testimony, responded to questions on direct and cross-examination, and could have been prosecuted for perjury. *See id.* at 342 (listing the functions of a witness in the judicial process); N.Y. C.P.L.R. 7505 (empowering arbitrators with the ability to issue oaths); N.Y. Penal Law § 210 (authorizing perjury charges for making false statements under oath). Applying the Supreme Court's reasoning in *Briscoe*, we therefore conclude that because the nature of this arbitration was materially indistinguishable to that of formal judicial proceedings, and because Henneman performed the same function as his judicial witness counterpart, absolute immunity

9

should attach to Henneman as a testifying witness at the arbitration hearings.[2]  We acknowledge,

however, that not all arbitrations will be conducted in a manner equivalent to that of the judicial

process.  *See Coppinger v. Metro-North Commuter R.R.*, 861 F.2d 33, 39 (2d Cir. 1988) (noting

possible differences).  The procedural safeguards employed in arbitrations may vary, altering the

function of witnesses accordingly.  We need not and do not opine as to the minimum safeguards

required in order for absolute immunity to attach in other arbitral settings.  It suffices for our

decision that the arbitral proceeding at issue encompassed an adequate number of safeguards so

as to ensure that its function and the function of the witnesses sufficiently mirrored the judicial

process.  Accordingly, we hold that, under a functional approach to immunity, Henneman is

---

[2]  To the extent Rolon claims that Henneman should not be viewed as a testifying witness but as a complaining witness because of the role he played in initiating the charges against him, *see White v. Frank*, 855 F.2d 956, 959 (2d Cir. 1988) (defining complaining witness as one "who played a role in initiating a prosecution"), we find this argument unpersuasive.  In the January 2001 settlement, Rolon released Henneman, *inter alia*, "from all causes of action, and claims and demands whatsoever, in law or equity, arising from the notices of discipline dated April 7 and August 23, 2000, provided that the arbitration arising from the later notice of discipline shall proceed and remain unaffected by this resolution."  According to the terms of this release, Henneman is therefore absolved of any liability for his role in initiating the disciplinary action.
  With respect to Moskowitz, the district court did not decide whether he was entitled to absolute immunity from liability under § 1983 based on his testimony at the proceedings.  The court reasoned that because "Moskowitz's testimony . . . was struck in its entirety[,] . . . there is no testimony to which immunity can attach," and therefore any false testimony could not have affected the outcome of Rolon's arbitration hearings.  *Rolon II*, 443 F. Supp. 2d at 536.  Because the relevant inquiry for purposes of immunity is not the function of the testimony in the arbitration but rather the function of the witness in the proceeding, immunity could attach if Moskowitz was acting as a testifying witness.  Rolon argues, however, that Moskowitz's role in initiating the complaint extended to his testimony at the disciplinary proceedings, thus making him a complaining witness.  *See White*, 855 F.2d at 961 (suggesting that a witness testifying at a judicial proceeding could, in certain circumstances, be considered a complaining witness).  We need not decide this issue because, as discussed *infra*, we conclude that Rolon has failed to state a legally cognizable claim as a result of Moskowitz's allegedly false testimony.

10

absolutely immune for his testimony in the arbitration proceedings.[3]

### III. Claims Against Moskowitz

Rolon alleges that Moskowitz lied to Henneman about his misconduct, which led to the preferment of disciplinary charges and Rolon's emotional and economic distress. Although Rolon contends that he is not attempting to bring a claim for malicious prosecution, other statements in his brief suggest the contrary. Thus, similar to the district court, we interpret Rolon's claims against Moskowitz as encompassing two possible causes of action: malicious prosecution or fabrication of evidence. *See Rolon II*, 443 F. Supp. 2d at 537. We hold that Rolon fails to state a claim under either theory.

### A. Malicious Prosecution

Rolon's claim for malicious prosecution is foreclosed by our decision in *Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004), in which we stated that "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Id.* at 316 (internal quotation marks omitted); *see also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ("In order to allege a cause of action for malicious prosecution under § 1983, [the plaintiff] must assert, in addition to the elements of

---

[3] For the reasons discussed in this opinion, the Supreme Court's two-step approach for determining whether an immunity defense is available in a § 1983 suit is satisfied. *See White*, 855 F.2d at 958 (setting forth approach) (citing *Malley v. Briggs*, 475 U.S. 335, 339-40 (1986) and *Tower v. Glover*, 467 U.S. 914, 920 (1984)). First, absolute immunity for testifying witnesses was available at common law. *See Briscoe*, 460 U.S. at 330-32. Second, there is nothing in § 1983's legislative history or purpose that counsels against recognizing immunity available at common law in § 1983 actions. *See id.* at 341-43 (concluding that the reasons supporting common law testimonial immunity apply with equal force to police officers).

malicious prosecution under state law, that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." (emphasis omitted)). Because of this antecedent issue, in *Washington* we rejected a malicious prosecution claim made by correctional officers against their superiors, who were alleged to have made false disciplinary charges against the plaintiffs. We observed that the plaintiffs were "charged in an administrative proceeding, and, critically, were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment." *Washington*, 373 F.3d at 316 (emphasis omitted).

The instant case is materially indistinguishable from *Washington*. Rolon suffered no "seizure" within the meaning of the Fourth Amendment. He was not imprisoned or detained, and he was never the subject of a criminal prosecution. Rolon, moreover, does not explicitly allege a violation of his Fourth Amendment rights; he only claims that Moskowitz's conduct violated his Fourteenth Amendment right to due process. Our holding in *Washington* therefore governs and we affirm the district court's dismissal of this claim.

### B. Fabrication of Evidence

Alternatively, Rolon asserts a § 1983 claim against Moskowitz for the fabrication of evidence. Specifically, he claims a deprivation of liberty interest due to the false disciplinary charges and consequent public humiliation that he suffered. He claims a deprivation of property interest due to his economic loss, namely the loss of opportunity to earn overtime pay.

With respect to Rolon's claim for damages arising from his humiliation, embarrassment, and emotional distress from Moskowitz's false accusations, such a claim is better left to state defamation law, as the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 (1976), makes

12

clear. *Id.* at 712 (establishing that any allegedly defamatory statements harming a person's reputation "did not deprive [that person] of any 'liberty' or 'property' interests protected by the Due Process Clause"). Although we acknowledge that Rolon repeatedly asserts in his brief that he is not making a defamation claim, some of his analysis suggests otherwise and thus, similar to our conclusion with regard to Rolon's malicious prosecution claim, we hold that, to the extent Rolon is making such a claim, it does not fall under the rubric of fabrication of evidence.

With respect to Rolon's claim for economic loss due to his denial of overtime pay, we have not yet examined whether there is a constitutional due process right against the fabrication of evidence where a deprivation of property is alleged. In *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), we addressed "whether the deprivation of liberty may be considered a legally cognizable result of the initial misconduct [of the manufacture of false evidence by a federal prosecutor]." *Id.* at 351. We answered in the affirmative, holding that "there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty." *Id.* at 344. By its broadest reading, our decision in *Zahrey* instructs that in order to state a legally sufficient claim for the manufacture of false evidence, a plaintiff must colorably allege that this evidence was used against him to cause a constitutional injury.[4]

Assuming that a deprivation of property without due process of law could constitute such

---

[4] The Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994), held that only violations of the Fourth Amendment can support § 1983 claims for malicious prosecution. *Id.* at 271, 274-75. For the reasons discussed below, we need not decide whether the reasoning of *Albright* forecloses the possibility of substantive due process claims under the Fourteenth Amendment in the context of fabrication of evidence.

a constitutional injury, Rolon's claim still fails because he does not adequately allege an unconstitutional deprivation of property. Property interests are not generally constitutionally established; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rolon has submitted no rules or understandings to prove that he had a legitimate claim to overtime. He offered only a conclusory assertion in his complaint that his alleged economic loss "includ[ed] the predictable loss of overtime pay," and a single page from the collective bargaining agreement that grants managerial rights to assign overtime. While we "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks omitted), we are not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions," *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted). Thus, we hold that Rolon failed to state a legally sufficient claim against Moskowitz for the fabrication of evidence.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Rolon's action. We hold that Henneman is entitled to absolute immunity for his testimony. We also hold that Rolon failed to state a legally sufficient claim against Moskowitz for his alleged remarks that led to the preferment of the disciplinary charges, because Rolon demonstrated no rules or understandings that proved he had a legitimate claim to overtime.

14