Ronald WILLIAMS, Plaintiff,

v.

**P.O. Demetrius YOUNG, P.O. Vernon Frazier, P.O. John Conrey, and P.O.s "John Doe" # 1–10, Defendants.**

**No. 08 Civ. 8667(NRB).**

United States District Court, S.D. New York.

Feb. 25, 2011.

---

Jon L. Norinsberg, Esq., New York, NY, for Plaintiff.

Robert William Yalen, Assistant United States Attorney, Southern District of New York, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Ronald Williams was arrested for refusing orders by defendant Veterans Affairs ("VA") Police Officer Demetrius Young to stop his vehicle and show identification outside the VA Medical Center on East 23rd Street in Manhattan. After being released within a few hours, he was

again arrested several weeks later by the Division of Parole when it determined that his actions had constituted a parole violation.

In its present posture,[1] plaintiff brings this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),[2] alleging that Officer Young deprived him of his federal civil rights under the Fourth, Fifth, and Fourteenth Amendments.[3] Specifically, plaintiff asserts claims for false arrest and malicious prosecution in violation of the Fourth Amendment; malicious abuse of process in violation of the Fifth and Fourteenth Amendments; and deprivation of his right to a fair trial in violation of the Fifth and Fourteenth Amendments. The defendant has moved for summary judgment dismissing all claims. For the reasons discussed below, the motion is granted.

## BACKGROUND[4]

This lawsuit has its origin in events which occurred on June 27, 2007. Except where indicated, the facts are not in dispute. When facts are disputed, all reasonable inferences have been drawn in favor of plaintiff.

## I. Events of June 27, 2007

Ronald Williams was employed as a driver by the VA and regularly transported patients to medical appointments. On June 27, 2007, Williams was driving a patient and the patient's wife to the VA Medical Center on East 23rd Street in Manhattan. VA Police Officer Young was stationed at the bottom of a semi-circular ramp leading to the entrance of the hospital.

When Williams approached the ramp in his vehicle, Officer Young asked him for identification. Williams gestured at the government license plates on his vehicle and raised an ID attached to a lanyard around his neck. This failed to satisfy Officer Young, whose assignment to control vehicle traffic on the ramp was part of enhanced security measures for a scheduled visit by the Secretary of the VA that day. Officer Young again asked Williams to show his identification. In response, Williams made the same motion a second time and said, "I already showed you my ID." Officer Young asked Williams who was in the car with him, and Williams responded, "This is the patient and that's his wife." (Def.'s Decl., Ex. A 92, 94, 104.) The patient's wife, who was in the back seat of the car, testified that she heard Officer Young next ask Williams to get out

1. Plaintiff now concedes that discovery has revealed that defendants Officers Vernon Frazier and John Conrey were not responsible for the injuries alleged. (Pl.'s Mem. Opp. Summ. J. 12 n. 7.) Under Fed.R.Civ.P. 41(a), after the defendants have filed a motion for summary judgment, an action cannot be dismissed at plaintiff's request except by a stipulation signed by all parties who have appeared or by court order on terms the court considers proper. We find it proper to dismiss all claims against Officers Frazier and Conrey.

2. Although plaintiff also seeks to assert causes of action under 42 U.S.C. § 1983, the only remaining defendant is a federal officer who is not liable under that statute. *See Wheeldin*

*v. Wheeler*, 373 U.S. 647, 650 n. 2, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); *District of Columbia v. Carter*, 409 U.S. 418, 424–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

3. Violations of plaintiff's First and Eighth Amendment rights are also alleged without explanation. (Amend. Compl. ¶ 30.) Drawing all inferences in favor of plaintiff, we are simply unable to construe his allegations in a way that implicates the First or Eighth Amendments.

4. The following facts are derived from the Amended Complaint, the parties' legal memoranda, and the documents appended thereto, as permitted under Fed.R.Civ.P. 56(c).

of the car, and Williams refuse. When Williams was deposed, he did not remember refusing to get out of the car, but conceded, "I'd say maybe she's right about that." (Def.'s Decl., Ex. A 129.) Williams then proceeded up the ramp, despite hearing and seeing Officer Young shouting and running behind him.

At the top of the ramp, Officers Frazier and Conrey were notified by radio to stop Williams. They opened the doors to his vehicle and turned off the ignition. Officer Young then arrived and together the three police officers forcibly removed Williams from the vehicle. In his deposition, Williams admitted grabbing the steering wheel, not letting go, and "hollering, 'What did I do? What did I do? I'm a government employee.'" (Def.'s Decl. Ex. A, 113, 118.)

After being handcuffed, Williams told the officers he had sustained an injury to his pinkie finger. The officers brought him to the emergency room on the premises, where he received medical attention. He was issued summonses for the following three violations of VA regulations: failure to comply with signs of a directive and restrictive nature posted for safety purposes, 38 C.F.R. § 1.218(b)(6), failure to comply with traffic directions of VA police, 38 C.F.R. § 1.218(b)(24), and disorderly conduct which creates a loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of the facility, 38 C.F.R. § 1.218(b)(11). The total fines to which Williams would be subject if convicted of the violations amounted to $325 with an additional $75 in processing fees. Williams was then released and drove the

patient's wife back to her home while the patient remained at the hospital overnight.

Officer Young prepared a Uniform Offense Report describing the events of June 27, 2007. The report contained several factual assertions which Williams disputes: it describes Williams (1) striking Officer Young with his vehicle as he pulled away, (2) driving up the ramp at an excessive speed, (3) resisting arrest by refusing orders to exit the vehicle and gripping the steering wheel, (4) punching and kicking the officers during his extraction from the vehicle, and (5) causing injuries to Officer Young. Williams now alleges that all of these descriptions were completely fabricated by Officer Young.[5]

## II. Subsequent Parole Proceedings

On June 28, 2007, Williams notified his parole officer, Carole Skinner, that the previous day's incident had taken place. At the time, Williams was approximately three years and nine months into a five-year term of parole, after having served a ten-year prison sentence for attempted murder. Officer Skinner, in turn, informed her supervisor that one of her parolees had been involved in an incident with VA police.

On June 29, 2007, Officer Skinner was contacted by the VA police, and a VA detective named Rivera provided her with a faxed copy of Officer Young's report containing the disputed facts. Officer Skinner gave the report to her supervisor, who, on July 2, 2007, directed her to contact the VA police officers named in the report. Officer Skinner then called Detective Rivera, who informed her that Officer Young was not available to take her call. On July 5, 2007, Officer Skinner again called the VA police to ask whether the

---

5. It is undisputed that at the time Officer Young created the report, he was unaware that Williams was on parole. He had already released Williams with the three summonses, which on their faces carried only monetary fines.

officers named in the report would be available to testify at a hearing. Again she was unable to speak with Officer Young and she left a message.

On July 18, 2007, Skinner's supervisor at the Division of Parole authorized the issuance of a warrant for Williams's arrest, charging him with four violations of parole conditions: (1) "disobey[ing] a police officer's traffic directions and an order to produce identification," (2) "resist[ing] arrest by assaulting a police officer," (3) "resist[ing] arrest by holding on to the steering wheel necessitating physical removal by three police officers," (4) "driv[ing] recklessly striking the arresting officer on the right side of his leg and hip area." On July 20, 2007, Williams was arrested at his scheduled meeting with Officer Skinner.

On August 2, 2007, Williams had a preliminary parole revocation hearing. The Division of Parole issued Officer Young a subpoena commanding him to appear at the hearing. He complied and briefly spoke with Parole Officer Skinner before the hearing began. When called to testify, Officer Young presented the same version of events described in his Uniform Offense Report. Williams presented his own version of the events and had the opportunity to question Officer Young. The hearing officer determined that probable cause existed for the warrant, and Williams remained in custody for approximately the next twelve weeks.

At the October 24, 2007 final parole revocation hearing, Williams accepted a plea bargain in which he pled guilty to the first violation, and in exchange the other three charges were withdrawn. The Administrative Law Judge's recommended sentence was to "revoke and restore" Williams's parole. This sentence was imposed and Williams was released from custody to continue serving the remainder of his parole.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which "might affect the outcome of the suit under the governing law ... [f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden to make a *prima facie* showing of the absence of disputed material facts rests with the moving party. *See Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this showing is made, the non-moving party must "designate specific facts showing that there is a genuine issue for trial" to overcome the motion. *Id.* at 324, 106 S.Ct. 2548. A court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.2010).

### II. Claims Arising Out of the June 27, 2007 Incident

■ In *Bivens*, the Supreme Court recognized an implied cause of action for money damages against federal officers who violate a plaintiff's constitutional rights. 403 U.S. 388, 91 S.Ct. 1999 (1971). However, the Court has subsequently held

*Bivens* actions to be precluded where Congress created an adequate statutory remedial scheme. *See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Indeed, even where the statutory scheme does not fully remedy the alleged harm, its existence may nonetheless make a *Bivens* remedy unavailable. *Schweiker v. Chilicky*, 487 U.S. 412, 428–29, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). In such circumstances, the key consideration for courts should be "the overall comprehensiveness of the scheme at issue, not the adequacy of the particular remedies afforded." *Dotson v. Griesa*, 398 F.3d 156, 166–67 (2d Cir. 2005).

In the present motion, the defendant argues that there are two such remedial schemes which should operate to bar plaintiff's *Bivens* action under *Bush* and *Chilicky*. The first is the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, which permits federal employees to seek compensation for injuries suffered in the course of employment. Significantly, Congress made FECA the exclusive remedy available to injured federal employees. *See* 5 U.S.C. § 8116(c) ("The liability of the United States or an instrumentality thereof . . . with respect to injury or death of an employee is exclusive and instead of all other liability . . ."); *see also Votteler v. United States*, 904 F.2d 128, 130 (2d Cir.1990) ("FECA is the exclusive remedy for work-related injuries sustained by federal employees.")

We acknowledge that the Second Circuit has never expressly held that FECA should displace all *Bivens* claims for constitutional violations. *See, e.g., Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir.1999)

(finding it unnecessary to decide whether FECA displaced a *Bivens* remedy where defendant failed to state a constitutional claim). For the reasons discussed below, the facts of the present case do not require us to venture beyond the holding of Stuto.[6]

The second remedial scheme applicable to plaintiff's claims is the Civil Service Reform Act ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in various sections of Title 5, United States Code). The CSRA directs agencies and civil servants' unions to establish grievance procedures in their collective bargaining agreements. *See* 5 U.S.C. § 7121(a)(1) (providing that "grievance procedure shall be the exclusive administrative procedure for resolving grievances which fall within its coverage"). The plaintiff's union had such a procedure, under which he could pursue "any complaint . . . concerning any matter relating to employment." (Decl. DiTeodoro, Ex. A, Art. 42, § 2(A).) In addition, the CSRA provides the opportunity for employees such as plaintiff to bring complaints to the Office of Special Counsel of the Merit Systems Protection Board concerning prohibited personnel actions such as unlawful discrimination, coercion of political activity, nepotism, and reprisal against whistleblowers. *See* 5 U.S.C. § 1214(a)(1)(A); § 2302(b).

■ The CSRA represents the paradigmatic example of a comprehensive remedial scheme which precludes courts from fashioning *Bivens* remedies for federal employees. In *Bush*, the Supreme Court held the CSRA to preclude a *Bivens* action by a federal employee whose rights were assumed to have been violated. 462 U.S. at 368, 103 S.Ct. 2404 ("Because such

---

6. At least as far as plaintiff's physical injuries are concerned, FECA would appear to be precisely the type of remedial scheme intended by Congress to foreclose the availability of money damages under *Bivens*. *See Briscoe v. Potter*, 355 F.Supp.2d 30, 39–41 (D.D.C.2004).

Plaintiff did in fact seek and receive compensation under FECA for his dislocated pinkie finger. He has conceded that an excessive force claim would be barred by that statute and he does not seek to maintain such a claim. (Pl.'s Mem. Opp. Summ. J. 10 n. 5.)

claims arise out of an employment relationship governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy."). Together with FECA, the CSRA is clear evidence that Congress did not intend to permit supplementary money damages for constitutional torts occurring within the field of federal employment. *Hightower v. United States,* 205 F.Supp.2d 146, 155 (S.D.N.Y.2002); *see also Kotarski v. Cooper,* 866 F.2d 311 (9th Cir.1989); *Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988); *McIntosh v. Turner,* 861 F.2d 524 (8th Cir.1988). We therefore find that the events of June 27, 2007 occurring at the workplace of plaintiff, a federal employee, do not give rise to any cause of action under *Bivens.* Such an action would be barred by the existence of the comprehensive remedial schemes of the FECA and CSRA. In addition, plaintiff can point to nothing *on the day of the incident* which could be considered a constitutional violation. Officer Young had probable cause to detain him based on his failure to obey traffic directions and orders to produce identification. Indeed, plaintiff pled guilty to this violation in his parole revocation hearing. That guilty plea, together with plaintiff's admission that he was "hollering" at the police, is sufficient to demonstrate that Officer Young was justified in detaining him and issuing summonses.[7]

### III. Claims Arising Out of Subsequent Parole Matters

In an apparent attempt to avoid the bars to his claims based on the June 27, 2007 incident, plaintiff argues that the workplace incident is not really the gravamen of his complaint. Rather, he seeks to hold Officer Young accountable for subsequently lying about it, both in the police report and at the parole revocation hearing. Thus plaintiff now insists that his claims for false arrest and malicious prosecution relate to his July 20, 2007 arrest and prosecution by the Division of Parole. Likewise, he claims that his malicious abuse of process and fair trial claims concern the preliminary parole revocation hearing, not the summonses he received from Officer Young.

We are not persuaded that this change in focus salvages the claims against the defendant because plaintiff has not adequately alleged Officer Young's personal involvement in the post-June 27 parole matters. Under a line of case authority originating in the context of § 1983 suits against state officials, *see Monell v. City of New York Dep't of Soc. Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), allegations which do not specify individual involvement are insufficient to state a *Bivens* claim against an officer. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

---

7. Plaintiff now apparently seeks to rely on the fact that he has never paid the fines for his summonses, nor has there been any final adjudication of the charges that he violated three VA regulations. It is odd that plaintiff would raise this argument since the VA's apparent reluctance to compound his troubles by separately prosecuting him on these charges would appear to benefit him in the amount of $400 and avoid additional entries in his criminal history.

own individual actions, has violated the Constitution.")

## IV. False Arrest

■ A *Bivens* claim for false arrest is based on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause. To state a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). It is well-established that where an individual's arrest is effectuated pursuant to a warrant, there can be no claim for false arrest. *See Jones v. Trump*, 971 F.Supp. 783, 788–89 (S.D.N.Y.1997) (*citing Singer*, 63 F.3d at 118–19); *see also Coakley v. Jaffe*, 72 F.Supp.2d 362, 363–64 (S.D.N.Y.1999); *Little v. City of New York*, 487 F.Supp.2d 426, 439 (S.D.N.Y.2007).

Officer Young is not alleged to have participated in the Division of Parole's arrest on July 20, which plaintiff now claims he was referring to in the Amended Complaint.[8] In any event, that arrest was effectuated pursuant to a warrant, making a false arrest claim unavailable. In such a circumstance, "the plaintiff must rely on malicious prosecution" as the proper cause of action, not false arrest. *Little*, 487 F.Supp.2d at 439; *see also Broughton v. State*, 37 N.Y.2d 451, 457–58, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975) ("When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution.")

■ Even assuming that plaintiff could pursue a false arrest claim, it would not withstand scrutiny. Plaintiff suggests that Officer Young's allegedly false report played an instrumental role in causing the Division of Parole to decide to issue a warrant. However, the relevant inquiry is not causation but whether the defendant intended to confine the plaintiff. *See Singer*, 63 F.3d at 118. Even assuming that some facts in the report were falsified, it was Detective Rivera, not Officer Young, who acted to forward this information to the Division of Parole. *See Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir.2000) ("The manufacture of false evidence, in and of itself ... does not impair anyone's liberty, and therefore does not impair anyone's constitutional right.") At the time he created the report, Officer Young did not know that plaintiff was on parole or that the Uniform Offense Report would be forwarded by another officer to the Division of Parole. The summonses Officer Young chose to issue plaintiff carried only monetary fines. Officer Young did not charge plaintiff with assaulting an officer or resisting arrest-charges which could have resulted in jail time. Thus we find no facts from which a reasonable jury could conclude that Officer Young's report was intended to cause plaintiff's incarceration.[9]

---

8. Defendant correctly observes that plaintiff should not be permitted to raise a new claim for the first time in his Memorandum in Opposition to the Motion for Summary Judgment. *See Beckman v. USPS*, 79 F.Supp.2d 394, 407–08 (S.D.N.Y.2000) ("[C]ourts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'"). However, we find·that plaintiff's Amended Complaint, while not a model of clarity, did specify the set of facts on which he sought to base his false arrest claim, en-

abling the defendants to prepare an appropriate defense.

9. Plaintiff argues that Officer Young later became aware that plaintiff was on parole and facing the prospect of incarceration, either when Young received the subpoena or when he spoke with Skinner before the hearing. Since these events occurred after the arrest complained of, they are more properly discussed below in relation to plaintiff's malicious abuse of process and fair trial claims, rather than the false arrest claim.

Finally, the actions of Parole Officer Skinner and the ultimate decision made by her supervisor to issue a warrant were not based solely on the allegedly false report. Instead, the Division of Parole had a multitude of information available on which to base its determination, including Officer Skinner's prior history with plaintiff and her conversation with him the day after the incident. Having pled guilty to one of the violations for which the warrant was issued, plaintiff cannot now meaningfully argue that it was issued wrongfully. Although some facts in Officer Young's report may be disputed, the facts constituting the violation to which Plaintiff pled guilty cannot. For these reasons, plaintiff's false arrest claim does not withstand summary judgment.

## V. Malicious Prosecution

 A *Bivens* claim for malicious prosecution implicates the same rights under the Fourth Amendment as a claim for false arrest. The elements of a claim for malicious prosecution are "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997).

 The preliminary parole revocation hearing clearly satisfies the first element. However, contrary to plaintiff's insistence in the Amended Complaint, that proceeding did not terminate in his favor, but with a guilty plea pursuant to a plea bargain. The Second Circuit has held that such a termination is not favorable to the accused. *See Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir.2004) ("[A] termination is not favorable to the accused ... if the charge is withdrawn or the prosecution abandoned

pursuant to a compromise with the accused." (citing *Smith–Hunter v. Harvey*, 95 N.Y.2d 191, 196, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000))). To permit plaintiff to pursue malicious prosecution claims for the three charges that were dropped in exchange for his guilty plea would be to upset the bargain struck between the parties at the hearing.[10] Thus, plaintiff fails to state a malicious prosecution claim for either the charge to which he pled guilty or the charges which were dropped.

## VI. Malicious Abuse of Process

 In contrast to malicious prosecution, which is properly pled as a Fourth Amendment violation, *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the malicious abuse of process violates procedural due process rights protected by the Fifth and Fourteenth Amendments. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994) ("In the criminal context, malicious abuse of process is by definition a denial of procedural due process.") (internal quotation omitted). The essence of a malicious prosecution claim is not the improper issuance of process, but "the improper use of process after it is regularly issued." *Id.* Under New York law, in order to prevail on a claim for malicious abuse of process, a plaintiff must show that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir.2003) (quoting *Cook*, 41 F.3d at 80); *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). The present claim concerns Officer

---

**10.** We note that plaintiff was represented by counsel at the time of his guilty plea and has

not sought to set aside his plea bargain by appeal or otherwise.

Young's testimony at the preliminary parole revocation hearing, which plaintiff alleges was intentionally perjured in order to obtain the collateral objective of justifying Officer Young's actions on the day of the incident.[11]

■ However, plaintiff's cause of action is not brought under New York law, but under *Bivens*. As far as this Court is aware, no cause of action exists under *Bivens* for malicious abuse of process. Plaintiff fails to cite any relevant authority for this proposition, and we find no decision of the Supreme Court or the Second Circuit recognizing that such a cause of action can be inferred directly from the Constitution. Because we are mindful that "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts," we will not do so here. *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir.2009) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001); *Chilicky*, 487 U.S. at 421, 108 S.Ct. 2460; and *Dotson*, 398 F.3d at 166).

■ Furthermore, the Supreme Court has made it clear that police officers have absolute immunity for the testimony they give as witnesses. *See Briscoe v. LaHue*, 460 U.S. 325, 342, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Rolon v. Henneman*, 517 F.3d 140, 146 (2d Cir.2008); *Johnson v. Kelsh*, 664 F.Supp. 162 (S.D.N.Y.1987). This is true even for perjured testimony. *Briscoe*, 460 U.S. at 342–43, 103 S.Ct. 1108. Plaintiff argues that Officer Young's absolute immunity should not extend to testimony at the preliminary parole revocation

hearing because such a hearing is the functional equivalent of a grand jury proceeding, in which some circuits have held *Briscoe* inapplicable. *See, e.g., Anthony v. Baker*, 955 F.2d 1395, 1399 (10th Cir.1992); *Wheeler v. Cosden Oil & Chem. Co.*, 734 F.2d 254, 261 (5th Cir.1984), *modified on other grounds*, 744 F.2d 1131 (1984); *Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984).

■ As the defendant correctly notes, there is good reason to reject this analogy. The preliminary hearing is simply the first of the two steps that the Supreme Court held to be due process requirements in the parole revocation context. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It is not a charging body like the grand jury. In any event, the Second Circuit has held that the relevant inquiry for determining whether immunity is available to testifying officers is not what type of proceeding takes place, but whether the officer's role was as a complaining witness "who played a role in initiating the prosecution." *White v. Frank*, 855 F.2d 956, 959 (2d Cir.1988); *see also Savino*, 331 F.3d at 76. We have already found that Officer Young played no such role in the Division of Parole's decision to charge plaintiff. His appearance at the hearing was merely as an ordinary witness under subpoena. He is therefore entitled to absolute immunity for his testimony.

## VII. Fair Trial

Plaintiff's fair trial claim appears to be duplicative of his malicious abuse of pro-

---

11. No basis is alleged for Officer Young's purported motive of justifying his reaction to plaintiff's behavior, nor is there any indication that he would have needed to lie in order to do so. This fact distinguishes the present case from one in which an officer might lie in order to save his job or avoid disciplinary consequences. *See, e.g., Hernandez v. Wells,*

2003 U.S. Dist LEXIS 21146, *22, 2003 WL 22771982, *9 (S.D.N.Y.2003) (finding a collateral objective was alleged against a testifying officer with a disciplinary history for filing false claims who had been told he would be fired if he ever violated any rules or regulations at any time in the future).

cess claim, as it concerns the same allegedly false testimony given by Officer Young and the same deprivation of liberty. However, unlike the malicious abuse of process, the existence of a *Bivens* action for deprivation of the right to a fair trial may be recognized in the Second Circuit. *See, e.g., Zahrey,* 221 F.3d at 348, 355–56. We find that the above analysis of Officer Young's absolute immunity is equally applicable here.

## CONCLUSION

For the above reasons, summary judgment is granted and all plaintiff's claims are dismissed.

**SO ORDERED.**